**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**ABERDEEN DIVISION**

**VINCENT EDWARDS, Individually, and on behalf of all others similarly situated** **PLAINTIFF**

**V.** **NO. 1:17-CV-131-DMB-DAS**

**THE CITY OF TUPELO, MISSISSIPPI, et al.** **DEFENDANTS**

**ORDER**

This proposed class action case is before the Court on the City of Tupelo's motion to strike certain paragraphs of a supplemental declaration submitted in support of Vincent Edwards' supplemental motion for class certification. Doc. #148.

**I**
**Procedural History**

On October 1, 2019, Vincent Edwards, "Individually, and on behalf of all others similarly situated," filed "Plaintiff's Second Amended Class Action Complaint for Violation of Civil Rights" against the City of Tupelo, Mississippi, Lee County Mississippi, Ramierre Warren, and certain fictious individuals. Doc. #124. The complaint proposes a class action of

> municipal court defendants … who were and are incarcerated by Defendants City of Tupelo and Lee County for contempt of court for nonpayment of fines, fees, and/or costs … without a determination, following a meaningful inquiry into the individual's ability to pay the fines and court costs or adhere to the court's installment payments plans, that the individuals willfully refused to make the debt payments.

*Id.* at 4.

On May 1, 2020, Edwards filed a supplemental motion to certify the proposed class. Doc. #135. In support of the motion, Edwards submitted a "Declaration of Halbert E. Dockins Jr., Plaintiff's Lead Counsel and Prospective Class Counsel." Doc. #136-8. After the defendants

responded to the motion to certify,[1] Edwards filed both a reply, Doc. #147, and a supplemental declaration of Dockins, Doc. #147-1.

On June 1, 2020, the City filed a motion to strike paragraphs 8 and 9 of the supplemental declaration. Doc. #148. The motion is fully briefed. Doc. ##156–57.

## II
## Analysis

The supplemental declaration of Dockins relates to the creation of Exhibit A to Edwards' pending motion to certify. Doc. #147-1; *see* Doc. #136-1. In the declaration, Dockins explains that Exhibit A was compiled from two documents produced by the defendants during discovery listing "all defendant inmates received by Lee County from the City of Tupelo from 2012-2017." Doc. #147-1 at ¶ 1. Dockins and his staff then filtered the two documents to produce a list of inmates charged with contempt of court "with an additional qualifier of 'fines paid'" who were confined for four days or more. *Id.* at ¶¶ 4–5. The names produced from this process were compiled in Exhibit A. *Id.*

Paragraphs 8 and 9 of the supplemental declaration refer to the efforts of Dockins' staff to review the circumstances surrounding the confinement of the persons listed in Exhibit A. These paragraphs provide:

> 8. Our review of the first 100+ files produced (Defendants refused to produce the entire 400+ files we requested) indicated that not one defendant on the list was jailed for any reason other than non-payment of fines or failure to adhere to a fine payment plan.
>
> 9. We then did a sampling of phone calls to the defendants. Many of the phone numbers we took from the files manually were inoperable or were incorrect, however, out of the ones we were able to reach, *every one* confirmed that they were jailed on the day they appeared for court without a hearing and that they had no present financial ability to pay their fines or fine payment plans on the day they were jailed.

[1] Docs. #142, #143.

*Id.* at ¶¶ 8–9.

The City argues that paragraphs 8 and 9 should be stricken because they are based on hearsay and, therefore, are "inherently unreliable."[2] Doc. #149 at 3.

**A. Evidentiary Standard for Class Certification Motions**

Federal Rule of Civil Procedure 23 provides, in relevant part:

> (a) PREREQUISITES. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.
> (b) TYPES OF CLASS ACTIONS. A class action may be maintained if Rule 23(a) is satisfied and if:
> (1) prosecuting separate actions by or against individual class members would create a risk of:
> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23. "To obtain class certification, parties must satisfy Rule 23(a)'s four threshold requirements, as well as the requirements of Rule 23(b)(1), (2), or (3)." *Maldonado v. Ochsner*

[2] The plaintiff also cites *Lentz v. Spanky's Restaurant II, Inc.*, 491 F. Supp. 2d 663 (N.D. Tex. 2007), apparently for the proposition that conclusory statements in an affidavit are inadmissible. In *Lentz*, the district court held that an affidavit with conclusory allegations, standing alone, could not support a finding of a similarly situated plaintiff for a proposed Fair Labor Standards Act collective action. The opinion did not address admissibility.

*Clinic Found.*, 493 F.3d 521, 523 (5th Cir. 2007).

"Rule 23 does not set forth a mere pleading standard. Instead, a party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, and so on." *Chavez v. Plan Benefit Servs., Inc.*, 957 F.3d 542, 545–46 (5th Cir. 2020) (cleaned up). To satisfy the rigorous standard, a court "will often have to probe behind the pleadings because the class determination generally involves considerations that are enmeshed in the factual and legal issues of the case." *Id.* at 546 (cleaned up). This duty includes conducting an "investigation" into disputed facts. *Id.*

As this Court previously observed in this case:

> While the Fifth Circuit does not appear to have addressed the propriety of considering hearsay in an ordinary motion for class certification, it has held that certification of a securities class action dependent on a fraud-on-the-market theory "must be made based on adequate admissible evidence to justify class certification." *Unger v. Amedisys Inc.* 401 F.3d 316, 319 (5th Cir. 2005). Notwithstanding *Unger*'s holding, courts in this circuit, in non-securities class actions, have held that "the rules of evidence do not apply in full force" to a motion to certify class when the evidence is "not offered as evidence of the merits of Plaintiffs' claims, but to support their class certification motion." *Steward v. Janek*, 315 F.R.D. 472, 478 (W.D. Tex. 2016). This approach is consistent with the holdings of "most district courts … that evidence need not be admissible under the Federal Rules of Evidence—or that the rules should not be applied strictly—on a motion for class certification." *Flores v. Anjost Corp.*, 284 F.R.D. 112, 124 n.3 (S.D.N.Y. 2012) (collecting cases); *see Paxton v. Union Nat'l Bank*, 688 F.2d 552, 562 n.14 (8th Cir. 1982) ("Hearsay testimony may be admitted to demonstrate typicality.").

*Edwards v. City of Tupelo*, No. 1:17-cv-131, 2019 WL 4643989, at *4 n.9 (N.D. Miss. Sept. 24, 2019). Based on this law, the Court noted that "[b]ecause nothing in *Unger* suggested the admissibility requirement was intended to extend beyond fraud-on-the-market class certifications, the Court would be inclined to follow the majority rule that evidence supporting a motion for class certification need not be admissible under the Federal Rules of Evidence." *Id.*

Having further reviewed relevant case law, the Court concludes that *Unger* did not impose a requirement that class certification evidence be admissible under the Rules of Evidence and that even if it did, such holding would not extend to class actions which do not rely on a fraud-on-the-market theory. The Court further concludes that, based on the nature of class certification proceedings, the Federal Rules of Evidence should not be strictly applied in such proceedings.

**1. The meaning of *Unger***

In *Unger*, a class action alleging securities fraud, "[t]he crux of th[e] appeal [was] the legal basis for and sufficiency of evidence supporting the district court's finding of predominance under Rule 23(b)(3)." 401 F.3d at 321. The *Unger* panel held that "[i]f the circumstances surrounding each plaintiff's alleged reliance on fraudulent representations differ, then reliance is an issue that will have to be proven by each plaintiff, and the proposed class fails Rule 23(b)(3)'s predominance requirement." *Id.* Accordingly, the panel held that "[o]nly by invoking the fraud on the market theory can these plaintiffs establish a classwide rebuttable presumption of reliance on [the defendant's] misrepresentations." *Id.* at 322. To this end, *Unger* held that "[w]hen a court considers class certification based on the fraud on the market theory, it must engage in thorough analysis, weigh the relevant factors, require both parties to justify their allegations, and base its ruling on *admissible evidence*." *Id.* at 325 (emphasis added).

While *Unger* referred broadly to admissibility, it never defined the term as meaning *admissible under the Federal Rules of Evidence*. The definition of the word "admissible" is not so limited. *See Admissible* Black's Law Dictionary (11th ed. 2019) (defining "admissible" as "Capable of being legally admitted; allowable; permissible"). Indeed, case law has long recognized evidence may be "admissible" for introduction in a proceeding without being admissible under the Federal Rules of Evidence. For example, hearsay testimony which is

inadmissible under the Federal Rules of Evidence may be "admissible at a suppression hearing," *United States v. Sundsboe*, 65 F. App'x 509, 509 n.1 (5th Cir. 2003), and may also be "admissible in preliminary injunction hearings," *Nelson ex rel. N.L.R.B. v. Advoc. Health & Hosps. Corp.*, 273 F. Supp. 3d 919, 929 n. 5 (N.D. Ill. 2017) (collecting cases).

Consistent with the broad meaning of "admissible," nothing in *Unger* suggests that the panel intended to require complete compliance with the Federal Rules of Evidence for evidence to be admissible in a class certification proceeding. Indeed, in evaluating the evidence supporting the plaintiffs' fraud-on-the-market theory, the *Unger* panel did not rely on the Federal Rules of Evidence in any respect. Rather, when finding error in the district court's reliance on certain internet printouts, the *Unger* panel held that "[a]t the certification stage, reliance on unverifiable evidence is hardly better than relying on bare allegations."[3] *Unger*, 401 F.3d at 324. Thus, *Unger* held that "unverifiable" evidence is inadmissible in class certification proceedings.

Additionally, in dicta, the *Unger* panel quoted with approval *Bell v. Ascendant Solutions, Inc.*, which held that "[i]n order to consider [a] motion for class certification with the appropriate amount of scrutiny, the Court must first determine whether Plaintiffs' expert testimony supporting class certification is reliable" after a "*Daubert*-type review" (rather than a full *Daubert* review). No. 301cv166, 2004 WL 1490009, at *2 (N.D. Tex. July 1, 2004). Thus, the panel seemed less concerned with the evidence's strict compliance with the Federal Rules of Evidence than with the veracity or reliability of such evidence.

Even if the *Unger* panel intended to import a Federal Rule of Evidence requirement into class certification proceedings, the plain language of the opinion limits such a holding to

[3] *Unger* also cited with approval a district court's observation that "[i]n order to consider Plaintiffs' motion for class certification with the appropriate amount of scrutiny, the Court must first determine whether Plaintiffs' expert testimony supporting class certification is reliable." 401 F.3d at 323 n.6.

certification proceedings premised on a fraud-on-the-market theory. For all these reasons, the Court finds that *Unger* does not require that evidence used in support of a motion for class certification be admissible under the Federal Rules of Evidence.

**2. The proper standard**

Four circuits have addressed the applicability of the Federal Rules of Evidence with respect to class certifications proceedings. The Third and Seventh Circuits have held that expert testimony in a class certification proceeding must meet the admissibility requirements of Federal Rule of Evidence 702 and the related *Daubert* standard. *See Am. Honda Motor Co., Inc. v. Allen*, 600 F.3d 813, 815–16 (7th Cir. 2010) ("[T]he district court must perform a full *Daubert* analysis before certifying the class if the situation warrants."); *In re Blood Reagents Antitrust Litig.*, 783 F.3d 183, 187 (3d Cir. 2015) ("[A] plaintiff cannot rely on challenged expert testimony, when critical to class certification, to demonstrate conformity with Rule 23 unless the plaintiff also demonstrates, and the trial court finds, that the expert testimony satisfies the standard set out in *Daubert*.").

The Eighth Circuit, in *In re Zurn Pex Plumbing Products Liability Litigation*, reached a different conclusion. 644 F.3d 604, 613–14 (8th Cir. 2011). In *In re Zurn*, the Eighth Circuit observed that unlike a summary judgment proceeding which then relied only on admissible evidence, "a court's inquiry on a motion for class certification is 'tentative,' 'preliminary,' and 'limited.'" *Id.* at 613. Noting Supreme Court precedent that a class certification proceeding is "of necessity … not accompanied by the traditional rules and procedure applicable to civil trials," the Eighth Circuit held that the district court did not err in conducting a less rigorous "*Daubert* analysis which scrutinized the reliability of the expert testimony in light of the criteria for class certification and the current state of the evidence." *Id.* at 613–14.

In *Sali v. Corona Regional Medical Center*, the Ninth Circuit considered an appeal from a

denial of class certification alleging employment claims. 909 F.3d 996, 1000 (9th Cir. 2018). On appeal, the plaintiffs challenged the district court's decision to strike a declaration because the declarant could not authenticate the information in the declaration due to a lack of personal knowledge and because the declaration contained improper opinion testimony. *Id.* at 1003. In reversing the district court, the *Sali* court rejected the holdings of the Seventh Circuit in *American Honda* and the Third Circuit in *In re Blood Reagents* as premised on "conclusory presumptions."[4] *Id*. at 1005. The court then cited with approval the Eighth Circuit's *In re Zurn* focus on "the differences between Rule 23, summary judgment and trial that warrant greater evidentiary freedom at the class certification stage." *Id.* Additionally, the Ninth Circuit further found a relaxed evidentiary standard to be supported by the "analogous field of standing," which "varies at the complaint, summary judgment and trial phases." *Id.* at 1006. Ultimately, the Ninth Circuit held:

> When conducting its "rigorous analysis" into whether the Rule 23(a) requirements are met, the district court need not dispense with the standards of admissibility entirely. The court may consider whether the plaintiff's proof is, or will likely lead to, admissible evidence. Indeed, in evaluating challenged expert testimony in support of class certification, a district court should evaluate admissibility under the standard set forth in *Daubert*. But admissibility must not be dispositive. Instead, an inquiry into the evidence's ultimate admissibility should go to the weight that evidence is given at the class certification stage.

*Id.* (citation omitted). Applying this standard, the Ninth Circuit concluded that the district court erred by striking evidence "that likely could have been presented in an admissible form at trial." *Id.*

This Court finds the Ninth Circuit approach, which focused on the "ultimate admissibility" of a piece of evidence to be not only persuasive but more consistent with *Unger*'s focus on whether

[4] The *Sali* court included *Unger* in its analysis, observing that it "held that admissible evidence is required to support class certification." 909 F.3d at 1005. For the reasons above, the Court concludes that this appears to have been a misreading of *Unger*.

the proffered evidence is verifiable or reliable, as opposed to "admissible" under a specific rule. This flexible approach is also consistent with the Fifth Circuit's recent clarification that, even at the summary judgment stage, the "substance or content" of evidence need not be admissible under the Federal Rules of Evidence so long as the material may be presented at trial in an admissible form. *Patel v. Tex. Tech. Univ.*, 941 F.3d 743, 746 (5th Cir. 2019).

Accordingly, the Court concludes that at the class certification stage, evidence need not be admissible under the Federal Rules of Evidence. Rather, a court should consider to what extent the proffered evidence complies with the Federal Rules of Evidence, including whether the evidence could be presented in an admissible form at trial, and determine its weight accordingly. In this sense, the weight afforded evidence in a class certification proceeding is best described as inversely related to the evidence's admissibility under the Federal Rules of Evidence. Evidence which is inadmissible under the Federal Rules of Evidence or likely inadmissible at trial should necessarily be entitled to little weight. Evidence which is admissible under the Federal Rules of Evidence or likely able to be so admissible, should be given greater weight. Finally, evidence which is so deficient as to be "unverifiable," like the internet printouts in *Unger*, should be given no weight and deemed inadmissible. *See generally*, 401 F.3d at 424.

**B. The Motion to Strike**

Here, aside from arguing that the challenged paragraphs are insufficient standing alone to support class certification (an argument wholly unrelated to the evidence's admissibility), the City contends that even if the Federal Rules of Evidence do not strictly apply, the declaration's use of the word "we" "does not indicate who actually made the calls to the[] individuals," so as to preclude a finding of personal knowledge. Doc. #149 at 6–7. The City further argues that

> [t]he alleged statements by unidentified individuals pertaining to their memory of the procedures carried out in Tupelo Municipal Court are clearly hearsay and the

> fact that no name of any declarant is mentioned in the declaration makes this "evidence" unreliable to the point that it should not be considered evidence.

*Id.* at 7.

Edwards responds that his counsel used "I" and "we" interchangeably and that Dockins "spoke directly with the potential class members," as reflected by certain "transcripts" and exhibits submitted in opposition to the motion to strike. Doc. #156 at 3–4. The City does not dispute the representation that Dockins spoke with the prospective class members, so as to have personal knowledge of the conversations. Rather, it replies that the exhibits "show that none fit within the proposed class definition and highlight the inherent unreliability" of Exhibit A. Doc. #157 at 2.

Thus, at its heart, the motion to strike argues that because the declaration does not identify the prospective class members who made the statements, the challenged paragraphs are simply too unreliable to be considered at the class certification stage. However, the Court does not find the declaration, which is based on Dockins' personal knowledge and supported, at least in part, by other exhibits, to be so deficient as to be deemed unverifiable and inadmissible. Indeed, the fact that the parties can argue over the reliability of the statements based on extrinsic evidence suggests that the challenged paragraphs are verifiable. Accordingly, the challenges to the accuracy and reliability of paragraphs 8 and 9 are properly characterized as challenges "to credibility, not admissibility." *Romeo v. Antero Res. Corp.*, No. 1:17CV88, 2020 WL 1430468, at *6 (N.D.W.V. Mar. 23, 2020). Under such circumstances, motions to strike such evidence should be denied. *Id.*

## III
## Conclusion

For the reasons above, the City's motion to strike [148] is **DENIED**.

**SO ORDERED**, this 21st day of August, 2020.

**/s/Debra M. Brown**
**UNITED STATES DISTRICT JUDGE**